# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| EDITH M. MARSALIS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| JANET L. YELLEN, | ) | |
| Secretary of the Department of Treasury | ) | |
| (Internal Revenue Service), | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Comes now Plaintiff, and for her Complaint, states and alleges that:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that Plaintiff has brought this employment discrimination action for violations of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq., Section 501 of the Rehabilitation Act of 1973, as amended 29 U.S.C. § 621 et seq, and the Age Discrimination in Employment Act of 1967, as amended 29 U.S.C. § 621 et seq.

2. Venue is proper in this district court pursuant to 28 U.S.C. § 1391 (b) in that the alleged acts of discrimination herein occurred within geographical venue of this Court.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

3. Plaintiff timely filed her EEO Complaint with the Agency, and the Agency subsequently issued its decision on Plaintiff' EEO Complaint finding no discrimination. Plaintiff timely filed an appeal to the EEOC and the EEOC issued its decision affirming the Agency's Decision finding no discrimination on July 28, 2022. In the EEOC Decision, Plaintiff was informed that she had the

right to bring a civil action in the United States District having jurisdiction over the subject matter of Plaintiff's EEO Complaint within 90 days of receipt of the EEOC Decision. Plaintiff has brought this action in this Court within 90 days of the EEOC Decision and has satisfied all of the prerequisites to bring the current action.

## PARTIES

4.      Plaintiff is an African American woman, born January 8, 1976.

5.      At all relevant times mentioned herein, Plaintiff was employed by the Internal Revenue Service (IRS) in the permanent position of seasonal GS-592-07 Tax Examining Technician at the IRS Kansas City Submission Processing Center (Center) in Kansas City, Missouri.

6.      Defendant Janet L. Yellen is the Secretary of the U.S. Department of Treasury, and the IRS is an agency within the Department of Treasury

## COUNT I
## VIOLATIONS UNDER THE REHABILITATION ACT

**7.**      Plaintiff incorporates herein under Count I paragraphs 1-6 above by reference as though fully alleged and stated herein.

### Denial of Reasonable Accommodations

8.      On September 1, 2016, Plaintiff was at her place of employment at the IRS Center and entered the elevator on the 6th floor. Upon pushing the button to go to the 1st floor, the elevator suddenly dropped at a rapid rate of speed and came to a sudden and abrupt stopped on the 4th floor. When the elevator came to a sudden and abrupt stopped, Plaintiff's neck forcibly snapped in a whiplash motion and her left arm jammed into her shoulder while she was holding the rail in the elevator to brace herself for the coming crash of the elevator While the elevator was descending, Plaintiff was totally terrified believing that she was about to face imminent death when the elevator finally crashed to the bottom floor.

2

9.     As the result of this horrifying elevator incident, Plaintiff suffered severe and excruciating painful injuries to her neck and shoulder. As the result of these injuries, Plaintiff sustained permanent impairments in her neck and shoulder from which she suffers to date. More severe and debilitating than her physical injuries, Plaintiff developed severe and disabling psychological disorders as the result of her horrifying experience in the elevator. Plaintiff has been diagnosed with, intense anxiety and fear of riding elevators and being enclosed spaces and Post Traumatic Stress Disorder Syndrome (PTSD). She now relives the elevator experience and frequently has feeling that she is going to be seriously injured or killed in her everyday life experiences.

10.     In September 2016, Plaintiff submitted a claim for workers' compensation benefits with the Office of Workers' Compensation Program (OWCP). OWCP determined that Plaintiff was temporary totally disabled from performing the duties of her employment by reason of her physical and mental injuries, those being extreme anxiety and PTSD. Plaintiff was disabled from performing her employment duties because her position required her to use the elevator at her place of work.

11.     On or about October 17, 2016, Plaintiff submitted a Request for Accommodation to the Agency with the Reasonable Accommodation Territory Manager Perry McIntosh. In support of her Request, Plaintiff submitted a report from her physicians, stating that Plaintiff was able to perform the duties of her employment if Plaintiff was provided a reasonable accommodation of being relocated the ground floor so that she would not be required to use the elevator. Plaintiff's physician further requested that Plaintiff be allowed intermittent time off so that she can receive physical therapy for her physical injuries and mental health counseling for her psychological disorders.

12.     Benjamin Ray, during the period in which Plaintiff was injured and disabled and at the time she submitted her Request for Reasonable Accommodation, was the Operation Manager in Accounting Control Services at the IRS Center. Mr. Ray was the deciding official (DO)l with respect to Plaintiff's Request for Reasonable Accommodation.

13.     The IRS Reasonable Accommodation Policy provides that Deciding Official (DO) upon receipt of a Request for Accommodation from an employee shall review and evaluate the request to determine whether the request can be reasonably accommodated by the Agency. If the request is denied, the DO shall notify the employee on the official form of the denial and stating the reasons for the denial citing the specific facts supporting the denial. The DO cannot simply state that a requested accommodation is denied because of "undue hardship" or because it would be "ineffective" If the requested accommodation is denied, the DO is required to explore with the employee whether another accommodation would be possible.

14.     Bejamin   never responded to Plaintiff's Request for Reasonable Accommodations in any respect in terms of granting or denying her request or exploring other options as required by the RA Policy. Mr. Ray simply ignored Plaintiff Request for Accommodations in spite of numerous and continuous requests and inquiries by Plaintiff and her representative.

15.     Because Mr. Ray refused to grant Plaintiff her Request for Accommodations, Plaintiff was unable to return to her employment with the IRS and was compelled to retire from her employment on December 3, 2019.

16.     Under the Rehabilitation, a federal employer is obligated to provide an employee with reasonable accommodation that would enable the employee to perform the essential duties of her employment. The Agency through its official Benjamin Ray willfully and maliciously, as described above, violated Plaintiff's rights under the Rehabilitation Act by denying Plaintiff a

reasonable accommodation so that she could perform her employment with the IRS at the Center or some other IRS facility. As a consequence, Plaintiff was compelled to retire from her employment.

Loss of Health Insurance

17.    OWCP had determined Plaintiff to be totally disabled from performing the regular duties of her employment from the date of her injuries on September 1, 2016, through the date she was compelled to leave her employment on disability retirement on December 3, 2019.

18.    During the period in which an employee is disabled from returning to her employment by reason of work-related injuries, the federal regulations require that the employee be placed on Leave Without Pay (LWOP), as opposed to being designated as Absence Without Leave (AWOL). CFR Sec 630.401.

19.    While an employee is declared to be totally disabled and unable to return to her regular employment, the employee is entitled to maintain her health insurance by having the insurance paid from deductions from the employee's monthly compensation benefits when the agency designates the employee's leave from her employment as LWOP due to her work-related injuries, as opposed to AWOL.

20.    If the agency designates the employee's leave as AWOL, the employee's health insurance is not eligible to be paid for by her compensation benefits, and as a consequence, the employee's health insurance will be eventually terminated.

21.    The Agency refused to recognized and disregarded Plaintiff's work-related disability, and through the actions of DO Ray refused to classify her leave from her employment as LWOP. Instead, DO Ray classified her leave as AWOL. Because the Agency refused to recognized

5

Plaintiff's disability, the Agency refused to process the paperwork so that Plaintiff's health insurance could be paid from Plaintiff's workers' compensation benefits.

22.     During the period of Plaintiff's disability, DO Ray issued, and caused to be issued by others, over a 100 AWOLs during the period that Plaintiff was disabled and unable to return to her work which led to the termination of Plaintiff's health insurance on or about October 31, 2017.

23.     Notwithstanding that Plaintiff was medically determined to be totally disabled and unable to report to her duty station, DO Ray used the AWOL's that he issued to Plaintiff for not reporting to work during the period of June 5, 2017, to August 14, 2017, as a pretext to suspend Plaintiff from her employment for 14 days beginning on September 20, 2017.

24.     The Rehabilitation Act prohibits an employer from discriminating against an employee with respect to the terms, conditions, benefits and privileges of the employee's employment because of the employee's disability.

25.     The issuance of the AWOL's by DO Ray during the period that Plaintiff was disabled and unable to report to her duty was unlawful in violation of the federal regulations and was without any legitimate nondiscriminatory purpose. The only reasonable conclusion that can be drawn for the motive and purpose of DO Ray's actions was to discriminate against Plaintiff within her employment in violation of the Rehabilitation Act. The only apparent purpose of DO Ray's action in issuing the unlawful AWOLs for Plaintiff's leave from her employment due to her disability was to cause Plaintiff harm by preventing her from maintaining her health insurance during her disability.

        As a direct and proximate result of the Agency actions through DO Ray and other officials in denying Plaintiff's rights, described above, under the Rehabilitation Act, Plaintiff's existing mental disorder have been greatly aggravated, intensified and prolonged impairing her capacity to

6

perform her normal life activities and depriving her of an enjoyable and quality life. Plaintiff has been deprived and will continue to be deprived of the income she would have received had been granted her requested accommodation to continue her employment with the Agency. She has incurred and will continue to incur substantial cost for the care and treatment of the mental disorders that she has developed as the result of the unlawful action of the Agency. All of the forgoing has caused Plaintiff to suffer damages and loss in an amount in excess of $100,000.

**COUNT II**
**RETALIATION & HOSTILE WORK ENVIRONMENT**

26.     Plaintiff incorporates herein under Count II paragraphs 1-25 above by reference as though fully alleged and stated herein.

Retaliation

27.     Plaintiff filed five prior EEO complaints before the EEO complaint referenced in the current action against her supervisor alleging she was subjected to harassment and a hostile work environment by these supervisors on the basis of her protected category in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq

28.     Plaintiff by filing these complaints gave her the reputation as a disgruntled employee and a troublemaker.

29.     DO Ray was aware of these complaints and the reputation she developed as the result of these complaints.

30.     DO Ray retaliated against Plaintiff because of these prior complaints by denying Plaintiff's requested accommodation so that she could return to her duty station and perform the duties of her employment as described above.

7

31. DO Ray retaliated against Plaintiff because of these prior complaints by issuing Plaintiff over hundred AWOL's during the period in which she was disabled and unable to return to her duty station and perform the duties of her employment, and as the result he caused plaintiff's health insurance to be terminated,

Hostile Work Environment

32. DO Ray by subjecting Plaintiff to over 100 AWOL's, which caused Plaintiff to lose her health insurance while she was disabled from returning to the duties of her employment and denying Plaintiff her requested accommodation so that she could return to her duty station created a work environment which caused Plaintiff to suffer great emotional stress, anxiety and despair and thereby rendered the work environment in which Plaintiff worked emotionally intolerable.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays the Court for judgment against Defendant for compensatory damages in an amount in excess of $100,000, attorney fees and litigation costs pursuant to 42 U.S.C. § 1988, court costs and such other relief as the Court deems just and proper

_Charles S. Scott, Jr._
Charles S. Scott, Jr. MO # 35385
6031 Albervan St.
(913) 268-4842 FX (913) 248-0424
Email: charlesscott@kc.rr.com
Attorney for Plaintiff

REQUEST FOR JURY TRIAL

Plaintiff requests a jury trial in the above- captioned case

_Charles S. Scott, Jr._
Charles S. Scott, Jr.

8

## LOCATION OF TRIAL

Plaintiff request that the trial of the above captioned case be held in the United States District Court for the Western District of Missouri, Western Division in Kansas City, Missouri.

_Charles S. Scott, Jr._
Charles S. Scott, Jr.

9